Eastern District of Kentucky
**FILED**

JAN 0 9 2006

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

CIVIL ACTION NO. 05-145-JBC

JACKIE W. WRIGHT,                                                                                          PLAINTIFF

V.   **PROPOSED FINDINGS OF FACT
     AND RECOMMENDATION**

JO ANNE B. BARNHART, Commissioner,
   Social Security Administration,                                                                    DEFENDANT

\* \* \* \* \* \* \* \* \* \*

## I. INTRODUCTION

Plaintiff Jackie W. Wright, by counsel, brings this action against the Commissioner of the Social Security Administration, under 42 U.S.C. § 405(g) for judicial review of the Commissioner's decision that based on his application for Disability Insurance Benefits (DIB) that was filed on June 28, 2002, he was not disabled and was not entitled to disability benefits.

This matter is before the court on cross-motions for summary judgment. [DE ##8, 9].

By Order of October 7, 2005, the district court referred this matter to the undersigned Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for a report and recommendation on dispositive matters.

## II. ADMINISTRATIVE PROCEEDINGS

Plaintiff alleged that he became disabled on April 27, 2001, at age 44, due to bilateral carpal tunnel syndrome, decreased memory and concentration, with depression and anxiety. (Tr. 21). Plaintiff's DIB application was denied initially and on reconsideration, resulting in ALJ hearings conducted on April 21, 2004. On July 27, 2004, ALJ Roger L. Reynolds found that plaintiff had not been disabled at any time through the date of that decision; therefore, he was not entitled to disability benefits. (Tr. 20-30).

Thereafter, on February 18, 2005, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 8-10), resulting in the filing of the present action for judicial review of the Commissioner's denial decision.

Plaintiff was born on October 13, 1956, has a high school education and graduated from Technical College in December 2002, with a degree in heating and air conditioning. Summarizing the ALJ's findings, the ALJ found that (1) claimant has not engaged in substantial gainful activity since his alleged onset date, (2) claimant's bilateral epicondylitis; bilateral carpal tunnel syndrome status post releases; major depression; history of panic attacks; rule out high borderline intellectual functioning and morbid obesity are considered "severe" impairments; however, these medically determinable impairments do not meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4; (3) claimant's allegations concerning his limitations are not totally credible; (4) claimant has the residual functional capacity to perform a significant range of light work, with certain restrictions; (5) claimant is unable to perform any of his PRW; (6) claimant has no transferable skills from any PRW and/or transferability of skills is not an issue in this case; (7) although claimant's exertional limitations do not permit him to perform the full range of light work, using Medical-Vocational Rule 202.21 as a framework for decision-making, there is a significant number of jobs in the national economy that claimant can perform, such as security jobs (light exertion) and the sedentary jobs of cashier and security; and (8) claimant has not been under a disability, as defined in the Social Security Act, at any time through the date of the ALJ decision, July 27, 2004. (Tr. 20-30).

With the denial by the Appeals Council of plaintiff's request to review the ALJ's decision, the ALJ's decision represents the final decision of the Commissioner, and this matter is ripe for judicial review under § 1631(c)(3) of the Social Security Act, 42 U.S.C. § 405(g).

### III. APPLICABLE LAW

The scope of judicial review of the Commissioner's final decision is limited to determining whether the Commissioner's decision is supported by substantial evidence, see 42 U.S.C. § 405(g);

Wright v. Massanari, 321 F.3d 611, 614 (6th Cir. 2003), and whether the correct legal standards were applied. Landsaw v. Secretary of Health and Human Services, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence" means such evidence as a reasonable person might accept as adequate to support a conclusion. Tyra v. Secretary of Health and Human Services, 896 F.2d 1024, 1028 (6th Cir. 1990), (quoting Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir. 1981, cert. denied, 461 U.S. 957 (1983).

In reviewing a case for substantial evidence, the court may not try the case de novo, resolve conflicts in evidence, or decide questions of credibility. Garner v. Heckler, 745 F.2d 383 (6th Cir. 1984).

## IV. THE CROSS-MOTIONS FOR SUMMARY JUDGMENT

In support of his motion for summary judgment, plaintiff argues that (1) the ALJ's residual functional capacity assessment did not adequately reflect his physical limitations, (2) the ALJ erred in his findings concerning plaintiff's mental capacities, and (3) the ALJ erred in finding that plaintiff's statements concerning his impairments in relation to his ability to work were not fully credible. For these reasons, plaintiff submits that the ALJ's decision is not supported by substantial evidence, that the Commissioner's decision should be reversed, and that he should be awarded disability benefits. Alternatively, plaintiff requests that this case be remanded for further proceedings.

In response, the defendant asserts that the Commissioner's decision is supported by substantial evidence and should be affirmed.

### Discussion/Analysis

In considering this matter, the Magistrate Judge has reviewed, in addition to the memoranda filed in support of each party's motion for summary judgment, the hearing decision, the medical evidence of record (Exhibits 1F through 26F), and the transcript of the ALJ hearing.

A. **ALJ's RFC assessment**

In arriving at plaintiff's RFC and the limitations associated therewith, the record reflects that the limitations assigned by the ALJ are largely drawn from and are consistent with most of the findings of plaintiff's treating physicians, Dr. Howard W. Lynd and Dr. Andrew J. Kovacs. An opinion rendered by a treating physician is typically entitled to substantial deference so long as it is supported by objective medical evidence. See 20 C.F.R. § 404.1527; *Jones v. Commissioner of Social Security*, 336 F.3d 469, 477 (6th Cir. 2003). However, the ALJ may reject an opinion from a treating physician if substantial evidence appears in the record to support another conclusion. *See Warner v. Commissioner of Social Security*, 375 F.3d 387, 391 (6th Cir. 2004). Ultimately, in this case, the ALJ adopted some, but not all, of the limitations proposed by Drs. Lynd and Kovacs.

The ALJ found that plaintiff could lift and carry weight at the light exertional level. This finding is actually more restrictive than the limitations proposed by Dr. Kovacs, who stated that plaintiff could occasionally lift up to twenty pounds, carry up to fifty pounds, and frequently carry up to twenty pounds (Tr. 424). Dr. Lynd provided conflicting opinions regarding plaintiff's ability to lift and carry. On January 14, 2004, Dr. Lynd stated that he agreed with the recommendation of Mr. Escobar that plaintiff should have a 25.8 pound occasional lifting limitation and a 14 pound frequent lifting limitation. (Tr. 383). However, just two months later, Dr. Lynd stated that plaintiff could lift and carry up to ten pounds occasionally. (Tr. 378). When a treating physician renders inconsistent opinions about a plaintiff's functional abilities, the ALJ may discount the physician's functional assessment. *See Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993). Nevertheless, even if the ALJ had adopted Dr. Lynd's limitations for lifting and carrying, the VE testified in response to an alternate hypothetical that at the sedentary level, an individual with plaintiff's limitations could still perform 119,000 cashier positions nationally. (Tr. 469).

With respect to plaintiff's ability to use his hands, the ALJ's hypothetical to the VE imposed the following limitations:

> occasional reaching or handling with the upper extremities; no exposure to industrial hazards, concentrated vibration, temperature extremes, or vibrating hand tools, no

4

> repetitive gripping, that is gripping once or more a minute or more than 15 minutes without a 20-minute break in between. This gripping should take place for no more than two to three hours per day; stand or walk no more than four hours per day; no rapid or repetitive flexion or extension of the wrists; no work with hands over the head; occasional pushing or pulling with the upper extremities;

Tr. 467.

On January 13, 2004, Dr. Lynd stated that he agreed with Mr. Escobar's proposal that repetitive gripping not be performed for more than 10-15 minutes with at least 15-20 minutes of hand rest in between grippings and not more than 2-3 hours during the day. (Tr. 383). On March 14, 2004, Dr. Lynd opined that plaintiff needed to avoid exposure to unprotected heights, operating cars, heat, cold, humidity, temperature changes, dust, fumes and gases. (Tr. 378). Additionally, Dr. Lynd felt that plaintiff could not repetitively perform fine manipulation, grasp, push, pull or reach. (Tr. 379). Dr. Kovacs recorded similar findings in that he told plaintiff to avoid exposure to unprotected heights, operating cars, heat, cold, humidity, temperature changes, and vibrations. (Tr. 425). Dr. Kovacs believed that plaintiff could not repetitively perform fine manipulation, grasp, push, pull or reach (Tr. 425). Further, Dr. Jeff Reichard found that plaintiff's muscle and grasp strength remained well preserved in the upper extremities as well as his sensation to pinprick and light touch (Tr. 210).

Thus, essentially, the ALJ's RFC finding and his hypothetical to the VE were distilled from the recommendations of Dr. Lynd and Dr. Kovacs, with the ALJ discounting Dr. Lynd's recommendations due to Dr. Lynd's inconsistent opinions. Based on the foregoing summary of the medical evidence concerning plaintiff's physical limitations, the Magistrate Judge is unpersuaded by plaintiff's argument that the ALJ erred in assessing plaintiff's physical capacity limitations.

## B.  Plaintiff's mental limitations

Plaintiff also argues that the ALJ erred in finding him to have only "moderate" limitations in his ability to maintain attention and concentration for extended periods, as well as to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, to complete a normal workday or workweek without interruptions from psychologically-

5

based symptoms, and to interact appropriately with the general public, citing the report by the Administration's consultative psychological examiner, as well as those by the State Agency non-examining sources.

In assessing plaintiff's mental limitations, the ALJ adopted the findings of two state agency psychological consultants, Dr. Edward Ross and Dr. Edward Stodola (Tr. 26-27, 204-205, 330-331). State agency medical and psychological consultants are highly qualified physicians who are also experts in Social Security disability evaluation, and the ALJ is required to consider their opinions. See 20 C.F.R. § 404.1527(f)(2)(I).

The ALJ's findings are not inconsistent with the objective clinical findings of Dr. Gary Maryman (Tr. 296-300). Contrary to plaintiff's argument, nothing in Dr. Maryman's report indicates that he has more than the moderate limitations assigned by Drs. Ross and Stodola. Dr. Maryman's overall GAF score of 56 is itself indicative of moderate symptoms. (Tr. 299). Although a letter was submitted signed by plaintiff's therapist and Dr. Klint indicating that plaintiff had a poor short-term memory, an inability to follow through on tasks, as well as an inability to stay focused on a task for an extended period of time (Tr. 392), Dr. Klint himself assigned plaintiff a GAF score of fifty to sixty when he was discharged from the hospital on May 27, 2002. (Tr. 170). Although Dr. Klint was not as specific as Dr. Maryman, Dr. Ross, and Dr. Stodola in setting forth plaintiff's mental limitations, a GAF score in the range of 50-60 is consistent with only moderate symptoms. *See* Diagnostic and Statistical Manual of Mental Disorders, Text Revision 2000 (DSM-IV-TR 2000).

Consequently, the Magistrate Judge concludes that the ALJ committed no error in assessing plaintiff's mental limitations.

C.    **ALJ's credibility finding**

Plaintiff contends that the ALJ erred by finding that plaintiff's statements concerning his pain and limitations were not totally credible. (Tr. 26). In evaluating subjective complaints of disabling pain, the court follows a two-prong analysis:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine, (1) whether objective medical

6

> evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir. 1986). The Sixth Circuit recently reiterated the well-settled rule that credibility determinations by an ALJ should be accorded great deference and that plaintiff's testimony may be discounted when there are contradictions between the medical reports, plaintiff's testimony, and other evidence. *See Warner v. Commissioner of Social Security*, 375 F.3d 387, 392 (6th Cir. 2004).

Although both Dr. Lynd and Dr. Kovacs felt that plaintiff's symptoms could interfere with his attention and concentration, as well as his ability to complete a normal work day on a regular basis, the ALJ noted substantial evidence in the record to contradict plaintiff's description of the degree of pain he experienced. For instance, subsequent to the time when plaintiff's employer went out of business, which was approximately the same time plaintiff alleged that he became disabled, plaintiff completed a course at Technical College in heating and air conditioning, completing the course with a 3.9 grade point average. (Tr. 21). This accomplishment certainly contradicts plaintiff's testimony regarding the effects of pain on his ability to work.

Additionally, the record reflects that plaintiff began receiving unemployment compensation after his employer went out of business. (Tr. 164, 442). Kentucky law provides that the ability to work is a prerequisite to receiving unemployment compensation. See Ky. Rev. Stat. Ann. § 341.350(2)(a) (Michie 2000); *Smith v. McMillan*, 841 S.W.2d 172, 175-76 (Ky. 1992). Therefore, it is generally recognized that the receipt of unemployment benefits is one factor to consider in evaluating plaintiff's credibility regarding the severity of his condition. *See Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). The Sixth Circuit found in an unpublished opinion that "there is no reasonable explanation for how a person can claim disability benefits under the guise of being unable to work, and yet file an application for unemployment benefits claiming that [he] is ready and willing tro work." *See Workman v. Commissioner of Social Security*, No. 02-6283, 2004 WL 1745782, at *7 (6th Cir. July 29, 2004). Furthermore, plaintiff told Dr. Maryman that he had looked

for other jobs when his factory shut down in April of 2001, but was unsuccessful (Tr. 296), and plaintiff expressed a "definite plan to return to work" when he was discharge from the hospital on May 27, 2002. (Tr. 170).

In determining whether a claimant is disabled, the Commissioner considers all symptoms, including pain, and the extent to which those symptoms "can reasonably be accepted as consistent with the objective medical evidence, and other evidence." 20 C.F.R. § 404.1529(a) (2005). When the medical signs or laboratory findings document a medically determinable impairment that could reasonably be expected to produce the symptoms alleged, as in this case, the Commissioner then evaluates the intensity and persistence of the symptoms to determine how those symptoms limit the claimant's capacity for work. See 20 C.F.R. § 404.1529(c)(1) (2005). In making this evaluation, the Commissioner considers the objective medical evidence as well as information from the claimant and from treating, examining, or other medical sources, as well as other factors, such as evidence of daily activities, the frequency and intensity of pain, any precipitating and aggravating factors, medication taken and any resulting side-effects, and any other measures taken to alleviate the claimant's pain. See 20 C.F.R. §§ 404.1529(c)(2), (3) (2005).

It is well settled that in reviewing a case for substantial evidence, the court may not decide questions of credibility. Garner v. Heckler, 745 F.2d 383 (6th Cir. 1984). The rationale underlying this rule of law is that it is the ALJ, who has the opportunity to question and observe a claimant, is certainly in the best position to assess a claimant's credibility. Consequently, the Magistrate Judge finds no merit in plaintiff's argument that the ALJ erred in finding plaintiff's testimony concerning his pain and limitations not fully credible.

## V. CONCLUSION

Having reviewed the administrative record, including the medical evidence, the cross-motions for summary judgment, and the applicable law concerning judicial review of the Commissioner's decision, the Magistrate Judge concludes that the Commissioner's decision that plaintiff is not disabled is supported by substantial evidence.

Accordingly, **IT IS HEREBY RECOMMENDED** that plaintiff's motion for summary judgment [DE #8] be **DENIED**, that the defendant's motion for summary judgment [DE #9] be **GRANTED**, and that this action be **DISMISSED** and **STRICKEN** from the docket.

The Clerk of the Court shall forward a copy of the Magistrate Judge's Proposed Findings of Fact and Recommendation to the respective parties who shall, within ten (10) days of receipt thereof, serve and file timely written objections to the Magistrate Judge's Findings of Fact and Recommendation with the District Court or else waive the right to raise the objections in the Court of Appeals. 28 U.S.C. section 636(b)(1)(B); Thomas v. Arn, 728 F.2d 813 (6th Cir. 1984), affirmed, 474 U.S. 140 (1985); Wright v. Holbrook, 794 F.2d 1152, 1154-55 (6th Cir. 1986); Fed.R.Civ.P. 6(e).

This ___9th___ day of January, 2006.

JAMES B. TODD,
UNITED STATES MAGISTRATE JUDGE

9